UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL S. JORGENSEN,

        Plaintiff,

  v.                                    Case No. 09-C-186

BYRAN BARTOW,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Daniel S. Jorgensen, who is confined at the Wisconsin Resource Center ("WRC") under a civil commitment as a sexually violent person, *see* Wis. Stat. ch. 980 ("Chapter 980"), has filed an action under 42 U.S.C. § 1983 claiming that his constitutional rights have been violated in various ways. More specifically, Jorgensen claims he slipped and fell due to the fact a "security" mop wringer was used in his unit at the WRC. (Compl. at 4.) He also alleges he was not allowed to see a doctor immediately after his fall. (*Id.* at 5.) The complaint further claims that Jorgensen has suffered "psychological deprivation" and has not received adequate treatment at the WRC. (*Id.* at 2-3.) Jorgensen asserts that his due process rights were violated when he was transferred from the Sand Ridge Secure Treatment Center ("Sand Ridge") to the WRC. (*Id.* at 3.) Jorgensen also advances claims under Wisconsin Statutes § 51.61(7)(a) and (b), Wisconsin Administrative Code HFS § 94.01 *et seq.*, and the Wisconsin state constitution. The facts underlying the claims relating to the "security" mop wringer and the delay in seeing a doctor are those that formed the basis of an

earlier federal lawsuit by Jorgensen, *Jorgensen v. Bartow*, 2008 WL 5170564 (E.D. Wis. Dec. 10, 2008).

Ordinarily, a plaintiff must pay a statutory filing fee of $350 to bring an action in federal court. 28 U.S.C. § 1914(a). Plaintiff, however, has requested leave to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915. And because he is under a Chapter 980 commitment, as opposed to a sentence for a crime, the Prisoner Litigation Reform Act ("PLRA"), which, *inter alia*, requires payment of the full filing fee over time, does not apply. *West v. Macht*, 986 F. Supp. 1141, 1142-43 (W.D. Wis. 1997).

Section 1915 is meant to ensure indigent litigants meaningful access to federal courts. *Nietzke v. Williams*, 490 U.S. 319, 324 (1989). An indigent plaintiff may commence a federal court action, without paying required costs and fees, upon submission of an affidavit asserting inability "to pay such fees or give security therefor" and stating "the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

Plaintiff filed the required affidavit of indigence. He states that he has assets of about $75 to $100 and that he does have an institutional job for which he receives $30 per month. Where it is not economically unfair for a plaintiff to pay a portion of the filing fee, I have authority to order payment of a portion of the expense while waiving the remainder. *Bryan v. Johnson*, 821 F.2d 455, 457 (7th Cir. 1987). Here, I conclude Jorgensen does not have sufficient income or assets to pay a meaningful portion of the filing fee. Accordingly, the entire filing fee will be waived.

Though individuals who are involuntarily committed, rather than convicted, are not deemed prisoners under the PLRA, I nevertheless maintain a duty to "screen" all complaints to ensure that they comply with the Federal Rules of Civil Procedure and that they state at least plausible claims

2

for which relief may be granted. A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). With these standards in mind, I now turn to the allegations of Jorgensen's complaint.

### "Security" Mop Wringer

Jorgensen's deliberate indifference claim regarding the WRC's use of a "security" mop wringer must be dismissed under the doctrine of claim preclusion. The principle of claim preclusion prohibits parties from re-litigating issues that were or could have been raised in a previous suit, and precludes subsequent claims arising from the "same incident, events, transaction, circumstances, or other factual nebula as a prior suit that ha[s] gone to final judgment." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999) (citations omitted). Claim preclusion applies when the previous ruling was a final judgment on the merits. *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 282 (7th Cir. 2007). Jorgensen's claim regarding the mop wringer was dismissed in his prior case at initial screening for failure to state a claim, which is a dismissal on the merits precluding the filing of a second complaint based upon the same facts. *See Fort-Greer*

3

*v. Daley*, 228 Fed. Appx. 602, 603 (7th Cir. 2007). Therefore, Jorgensen's claim regarding the mop wringer is dismissed.

**Housing at the WRC with Prisoners**

Jorgensen appears to allege a violation of his substantive due process rights protected by the Fourteenth Amendment based upon the fact he is housed at the WRC. Specifically, Jorgensen claims that defendant Bartow has brought about "psychological deprivation" by allowing Jorgensen, a Chapter 980 patient, to be housed in the WRC with inmates. Jorgensen asserts that "Chapter 980 patients do not belong at WRC . . . . Byron [sic] Bartow has, as a person who works for the State of Wisconsin the duty to tell whomever it is that is dropping chapter 980 patients off to be housed in his facility, he has a duty he is shirking." (Compl. at 6.)

Unlike prisoners convicted of a crime, Chapter 980 patients, as civil detainees, may not be punished. *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982). Chapter 980 patients "may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others." *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). These conditions include incarceration that is essentially identical to the conditions found in a common jail or prison. "The due process clause does not prohibit state officials from detaining civil committees or pretrial detainees temporarily with persons who have been convicted of crimes and treating them according to the rules applicable to inmates." *Thiel v. Wisconsin*, 399 F.Supp. 2d 929, 934 (W.D. Wis. 2005).

Taking Jorgensen's complaint at face value, he fails to allege how conditions at the WRC, where prisoners are housed with Chapter 980 detainees, are any worse than those of a standard

4

prison.[1] As a Chapter 980 detainee can be placed in a prison without raising the specter of impermissible punishment, there is no constitutional prohibition on housing prisoners along with detainees. *Allison*, 332 F.3d at 1079 ("Does placement in a prison, subject to the institution's usual rules of conduct, signify punishment? The answer, given by *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), is no."); *See McGee v. Thomas*, 2007 WL 2440990, *3 (E.D. Wis. 2007) (holding that transfer from the WRC to Sand Ridge did not constitute impermissible punishment); *see also Falcon v. U.S. Bureau of Prisons*, 852 F. Supp. 1413, 1420 (S.D. Ill. 1994) ("A pre-trial detainee does not have the right to be housed at the facility of his choice, nor does he have a right to remain in the institution to which he was initially, or even at one time, assigned."), *aff'd*, 52 F.3d 137 (7th Cir. 1995). Because placement in a facility in which prisoners are also housed is not punishment violating a substantive right of the Due Process Clause of the Fourteenth Amendment, Jorgensen's allegation that he is improperly housed with prisoners at the WRC fails to state a claim and will be dismissed.

---

[1] "Although the WRC, in part, houses correctional inmates, it cannot be termed a prison with regard to Chapter 980 patients." *Thielman v. Leean*, 282 F.3d 478, 483 (7th Cir. 2002). The WRC is administered by the Department of Health Services as a correctional institution in cooperation with the Department of Corrections. The Department of Health Services is charged to:

> establish the Wisconsin resource center on the grounds of the Winnebago mental health institute near Oshkosh. Notwithstanding the s. 301.03, the department shall have responsibility for administering the center as a correctional institution that provides psychological evaluations, specialized learning programs, training and supervision for inmates whose behavior presents a serious problem to themselves or others in state prisons and whose mental health needs can be met at the center.

Wis. Stat. § 46.056(1). The correctional officers providing security at the WRC are employees of the Department of Corrections. Wis. Stat. § 46.056(2).

5

**Inadequate Treatment**

Jorgensen also alleges that he is not receiving adequate treatment at the WRC.[2] I understand Jorgensen to advance a claim that his substantive rights under the Due Process Clause of the Fourteenth Amendment have been violated due to the inadequacy of the mental health treatment he is receiving in the WRC. In addition to bringing this action under § 1983, Jorgensen also makes claims under Wis. Stat. § 51.61(7)(a) and (b), which provide for enforcement of violations of Wis. Stat. § 51.61. This section provides that patients committed under Chapter 980 have a right to receive, among other things, prompt and adequate treatment, and a humane psychological and physical environment. Wis. Stat. § 51.61(1), (1)(f) and (1)(m). Absent from the complaint is any further articulation of how exactly Jorgensen believes his treatment to be constitutionally infirm.

The Supreme Court has held that a mentally retarded person, involuntarily committed, enjoyed "constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *Youngberg*, 457 U.S. at 324. The Court in *Youngberg* went on to note that courts may properly begin with the "generalization that there is a right to minimally adequate training. The basic requirement of adequacy . . . may be stated as that training which is reasonable in light of identifiable liberty interests and the circumstances of the case." *Id*. at 319 n.25.

Following *Youngberg* and other cases, courts have concluded that sex offender detainees are entitled to some form of treatment. *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003); *see also*

---

[2]"I am not receiving the essential elements of minimally adequate treatment that include a humane, physical, and psychological treatment environment, and sufficient numbers of qualified staff, and an individualized treatment plan for each patient." (Compl. at 2.)

6

*Williams v. Nelson*, 398 F.Supp. 2d 977, 986 (W.D. Wis. 2005) (persons involuntarily committed as sex offenders have a constitutional right to adequate treatment). States which detain sex offenders "enjoy wide latitude in developing treatment regimens." *Kansas v. Hendricks*, 521 U.S. 346, 368 n.4 (1997).

Jorgensen's allegation regarding his lack of adequate treatment at the WRC, though scant, at least minimally states a claim that his substantive due process rights were violated. Jorgensen's allegation is also sufficient to state a claim under Wis. Stat. § 51.61(1)(f) and (m), so I will excercise supplemental jurisdiction over the state law claim. 28 U.S.C. § 1367. Therefore, these two claims will proceed.

### Delay in Evaluation by a Doctor

In his prior case I dismissed Jorgensen's claim that Bartow was deliberately indifferent for the three day delay between his injury and when he was seen by a doctor, as Jorgensen failed to allege how Bartow was personally involved. Here, Jorgensen attempts to resurrect this same claim by pleading it again in his complaint. Such an attempt is arguably foreclosed on the basis of claim preclusion, as it arose from the same facts of those relating to the issues of Jorgensen's prior federal lawsuit. *Okoro*, 164 F.3d at 1062. In any event, I find that Jorgensen has no claim against Bartow as he has again failed to allege how Bartow was personally involved. This claim will be dismissed.

### Transfer to the WRC

Jorgensen also claims his procedural due process rights were violated when he was

7

transferred from Sand Ridge to the WRC without a hearing.[3] In order to state a claim for violation of a procedural due process right, a plaintiff must allege a protected liberty interest, which can arise from either the Federal Constitution or state law. *Domka v. Portage County, Wis.*, 523 F.3d 776, 779-80 (7th Cir. 2008). The leading case on procedural due process in the Chapter 980 context is *Thielman v. Leean*, 282 F.3d 478 (7th Cir. 2002). There, the Seventh Circuit applied the principles of *Sandin v. Connor*, 515 U.S. 472 (1995), concluding that Chapter 980 inmates have constitutional procedural protections in their confinement level only when the proposed change in confinement would effect an "atypical and significant hardship in relation to the ordinary incidents of [the inmate's] confinement." 282 F.3d at 484. Even if Jorgensen could identify a Wisconsin procedure or law requiring a hearing prior to transfer, which he has not, that requirement does not trigger federal protection unless the change in confinement is truly significant. As the Seventh Circuit put it, "any person already confined may not nickel and dime his way into a federal claim by citing small, incremental deprivations of physical freedom." *Id*.

In determining whether a change in confinement is atypical or merely "the stuff of nickels and dimes," the court is to look to the ordinary incidents of confinement. *Id*. Here, Jorgensen does

---

[3]Additionally, Jorgensen makes a fleeting reference in the same paragraph of the complaint to his belief "there should have been a doctor's orders to put handcuffs and shackles on me." (Compl. at 3.) To the extent this can be construed as a separate claim that he was improperly restrained during transport, such a claim is foreclosed by *Thielman v. Leean*, 282 F.3d 478 (7th Cir. 2002), in which the court held that a Chapter 980 patient does not have a liberty interest in avoiding restraints during transport outside a mental health facility. *See also Knox v. McGinnis*, 998 F.2d 1405 (7th Cir. 1993) (use of "black box" on handcuffs is permissible restrictive mechanism on special status prisoners during transport); *Allison*, 332 F.3d at 1079 (Chapter 980 patients "may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not be punished."); *Williams v. Nelson*, 2004 WL 2830666, *9 (W.D. Wis. Dec. 9, 2004) (claim by Chapter 980 detainee regarding the restraints used during transport outside Sand Ridge is foreclosed by Seventh Circuit's decisions in *Theilman* and *Knox*).

8

not allege that he is treated any worse than anyone else committed to the WRC under ordinary conditions. Therefore, the mere fact he is now housed in the WRC (and not Sand Ridge) cannot be a materially atypical change in confinement when compared to the ordinary confinement conditions in a Chapter 980 facility, as the WRC is just such a facility. It might be arguable if one committed to the WRC were confined to a secluded cell for significant periods of time, but Jorgensen has not alleged that he has been subject to any additional restriction at the WRC. A liberty interest is implicated only when the changes complained of are so major that they stand out even within the prison system (or the Chapter 980 system). Jorgensen fails to state a procedural due process claim as his transfer from Sand Ridge to the WRC alone is insufficient to constitute a materially atypical change in confinement implicating a protected liberty interest.

Jorgensen's procedural due process claim regarding his transfer must fail for another, independent reason. This is because he has failed to allege how defendant Bartow, the director of the WRC, could have been involved in the alleged failure to conduct a hearing prior to Jorgensen's transfer.[4]

**THEREFORE, IT IS HEREBY ORDERED** that plaintiff's request to proceed *in forma pauperis* is **GRANTED**. Plaintiff may proceed with a Fourteenth Amendment claim against defendant Bartow based upon the allegation that plaintiff was denied adequate treatment. As I will exercise supplemental jurisdiction over his claim based upon Wis. Stat. § 51.61(1), plaintiff may

---

[4]The complaint reads: "When the staff at Sand Ridge Secure Treatment Center transferred me to WRC, there should have been a hearing in a court of law to remove me from a least restrictive environment to a stricter, harsher, environment." (Compl. at 3.)

9

also proceed with his claim he was denied prompt and adequate treatment, and a humane psychological and physical environment. All other claims are dismissed for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED**, pursuant to Fed. R. Civ. P. 4(c)(2), that the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the summons, and this order upon the defendants. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(b). The current fee for waiver-of-service packages is $8 per item. The full fee schedule is provided in 28 C.F.R. § 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service, the U.S. Marshals Service fees are not considered court fees, and Congress has not made any provision for these fees to be waived by the court.

**IT IS ALSO ORDERED** that copies of this order be sent to the director of WRC and to Corey Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff must provide defendants or their counsel with copies of all future motions or papers filed by the plaintiff in this action.

Dated this   17th   day of March, 2009.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge